Marshall, Ch. J.
 

 (all the seven judges being present), delivered the opinion of the court as follows, viz : — This suit is instituted to recover from the underwriters the amount of a policy insuring the brig John, on a voyage from Charleston to Cadiz. The vessel was captured on her passage, by a British squadron, then blockading that port, was sent into Gibraltar for adjudication, and was there condemned by the court of vice-admiralty as lawful prize. The assured warrants the ship to be American property ; and the defence is, that this warranty is conclusively falsified by the sentence of condemnation.
 

 The points made for the consideration of the court are, 1. Is the sentence of a foreign court of admiralty conclusive evidence, in an action against the underwriters, of the facts it professes to decide ? If so, 2. Does this sentence, upon its face, falsify the warranty contained in the policy ? If not, 3. Does the special verdict exhibit facts which falsify the warranty ?
 

 The question on the conclusiveness of a sentence of a foreign court of admiralty having been more than once elaborately argued, the court reluctantly avoids a decision of it at present. But there are particular reasons which restrain one of the judges from giving an opinion on that point, and another ease has been mentioned, in which it is said to constitute the sole question. In that case, it will, of course, be determined.
 

 *Passing over the consideration of the first point, therefore, the court proceeded to inquire whether this cause could be decided on the L second and third points. Admitting, for the present, that the sentence of a foreign court of admiralty is conclusive, with respect to what it professes to decide, does this sentence falsify the warranty contained in this policy, that the brig John is American property ? The sentence declares “ the said brig to have been cleared out for Cadiz, a port actually blockaded by the arms of our sovereign lord the king, and that the master of said brig persisted in his intention of entering that port, after warning from the blockading force not to do so, in a direct breach and violation of the blockade thereby notified.”
 

 The sentence, then, does not deny the brig to have been American property. But it is contended by the counsel for the underwriters, that a
 
 *118
 
 ship warranted to be American is impliedly warranted to conduct herself, during the voyage, as an American, and that an attempt to enter a blockaded port, knowing it to be blockaded, forfeits that character. This position cannot be controverted.
 
 [1]
 

 |:199] It remains, then, to inquire, whether the sentence proves the brig John to have violated the laws of blockade ? that is, whether the cause of condemnation is alleged in such terms as to show that the vessel had forfeited her neutral character, or in such terms as to show its insufficiency to support the sentence ? The fact of clearing out for a blockaded port, is in itself innocent, unless it be accompanied with knowledge of the blockade. The clearance, therefore, is not considered as the offence ; the persisting in the intention to enter that port, after warning by the blockading force, is the ground of the sentence. Is this intention (evidenced by no fact whatever) a breach of blockade ? This question is to be decided by *a reference to the law of nations, and to the treaty between the United States and Great Britain.
 

 Vattel, lib. 3, § 177, says, “All commerce is entirely prohibited with a besieged town. If I lay siege to a place, or only form the blockade, I have a right to hinder any one from entering, and to treat as an enemy whoever attempts to enter the place, or carry anything to the besieged, without my leave.” The right to treat the vessel as an enemy is declared, by Yattel, to be founded on the attempt to enter, and certainly this attempt must be made by a person knowing the fact.
 

 But this subject has been precisely regulated by the treaty between the United States and Great Britain, which was in force when this condemnation took place. That treaty contains the following clause : “ And whereas, it frequently happens, that vessels sail for a port or place belonging to an enemy, without knowing that the same is either besieged, blockaded or invested ; it is agreed, that every vessel so circumstanced may be turned away from such port or place, but she shall not be detained, nor her cargo, if not contraband, be confiscated, unless, after notice, she shall again
 
 attempt
 
 to enter ; but she shall be permitted to go to any other port or place she may think proper.” This treaty is conceived to be a correct exposition of the law of nations; certainly, it is admitted by the parties to it, as between themselves, to be a correct exposition of that law, or to constitute a rule in the place of it.
 

 Neither the law of nations nor the treaty admits of the condemnation of the neutral vessel, for the intention to enter a blockaded port, unconnected with any fact. Sailing for a blockaded port, knowing it to be blockaded, has been, in some English cases, construed into an attempt to enter that port, and has, therefore, been adjudged a breach of the blockade, from the *2001 deParture the vessel. *Without giving any opinion on that point, J it may be observed, that in such cases, the fact of sailing is coupled with the intention, and the sentence of condemnation is founded on an actual breach of blockade.
 
 [2]
 
 The cause assigned for condemnation would be a justifiable cause, and it would be for the foreign court alone to determine
 
 *119
 
 whether the testimony supported the allegation that the blockade was broken. Had this sentence averred that the brig John had broken the blockade, or had attempted to enter the port of Cadiz, after warning from the blockading force, the cause of condemnation would have been justifiable, and without controverting the conclusiveness of the sentence, the assured could not have entered into any inquiry respecting the conduct of the vessel. But this is not the language of the sentence. An attempt to enter the port of Cadiz is not alleged, but persisting in the intention, after being warned not to enter it, is alleged as the cause of condemnation. This is not a good cause, under the treaty. It is impossible to read that instrument, without perceiving a clear intention in the parties to it, that after notice of the blockade, an attempt to enter the port must be made, in order to subject the vessel to confiscation. By the language of the treaty, it would appear, that a second attempt, after receiving notice, must be made, in order to constitute the of-fence which will justify a confiscation. “ It is agreed,” says that instrument, “ that every vessel so circumstanced ” (that is, every vessel sailing for a blockaded port, without knowledge of the blockade) “ may be turned away from such port or place, but she shall not be detained, nor her cargo, if not contraband, be confiscated, unless, after notice, she shall again
 
 attempt
 
 to enter.”
 

 These words strongly import a stipulation that there shall be a free agency on the part of the commander of the vessel, after receiving notice of the blockade, and that there shall be no detention nor condemnation, unless, in the exercise of that free agency, a second attempt to enter the invested place shall be made. It cannot be necessary to state that testimony which would amount to evidence of such second attempt. Lingering about the place, as if watching for an opportunity *to sail into it, or the single [*201 circumstance of not making immediately for some other port, or possibly, obstinate and determined declarations of a resolution to break the blockade, might be evidence of an attempt, after warning, to enter the blockaded port.
 
 [1]
 
 But whether these circumstances, or others, may or may not amount to evidence of the offence, the offence itself is attempting again to enter, and “ unless, after notice, she shall again
 
 attempt
 
 to enter,” the two nations expressly stipulate “ that she shall not be detained, nor her cargo, if not contraband, be confiscated.” It would seem as if, aware of the excesses which might be justified, by converting intention into offence, the American negotiator had required the union of fact with intention to constitute the breach of a blockade.
 

 The cause of condemnation, then, as described in this sentence, is one which, by express compact between the United States and Great Britain, is an insufficient cause, unless the intention was manifested in such manner as, in fair construction, to be equivalent to an attempt to enter Cadiz, after knowledge of the blockade. This not being proved by the sentence itself, the parties are let in to other evidence.
 

 However conclusive, then, the sentence may be, of the particular facts which it alleges, those facts not amounting, in themselves, to a justifiable cause of condemnation, the court must look into the special verdict, which
 
 *120
 
 explains what is uncertain in the sentence. The special verdict shows that the vessel was seized on her approaching the port of Cadiz, without previous knowledge of the blockade ; that she never was turned away, and “ permitted to go to any other port or placethat she was “ detained ” for several days, and then sent in for adjudication, without being ever put into the possession of her master and crew, so as to enable her either “ again to
 
 attempt
 
 to enter” the port of Cadiz, or to sail for some other port; that while thus detained, the commander of the blockading squadron drew the master of the John into a conversation, which must be termed insidious, since its object was to trepan him into expressions which might be construed into evidence of an intention to sail for Cadiz, should he be liberated; *°02l availing himself of some equivocal, unguarded, and, perhaps, ■* indiscreet answers on the part of the master, the vessel was sent in for adjudication ; and on those expressions, was condemned.
 

 This court is of opinion, that these facts do not amount to an
 
 attempt
 
 again to enter the port of Cadiz, and therefore, do not amount, under the treaty between the United States and Great Britain, to a breach of the blockade of Cadiz. The sentence of the court of vice-admiralty in Gibraltar, therefore, is not considered as falsifying the warranty, that the brig John was American property, or as disabling the assured from recovering against the underwriters in this action, and the testimony in the case shows that the blockade was not broken.
 

 The judgment of the circuit court is to be reversed, with costs, and it is to be certified to that court, that judgment is to be entered on the special verdict for the plaintiff.
 

 Judgment reversed.
 

 [1]
 

 Maryland Ins. Co.
 
 v.
 
 Woods, 6 Cr. 29 ; Schwartz
 
 v.
 
 Insurance Co. of North America, 3 W. C. C. 117.
 

 [2]
 

 **The Circassian, 2 Wall. 135 ; The Bermuda, 3 Id. 514 ; The Admiral, Id. 603.
 

 [1]
 

 As to what amounts to an intent to violate a blockade, see the eases collected in Bright. Fed. Dig. 853.