Mr.' CJúef Justice Marshall
 

 delivered the opinion • of the court, and after, slating thé-facts, proceeded as follows:
 

 Qri the part of the plaintiff in error, it-has been contended, that the assured'have sustained a technical total loss, by a peril within that clause in the policy, which insures “against all unlawful arrests, restraints,, •and detainments of kings,” &c.
 

 
 *189
 
 He contends, 1st. That a blockade is a “restraint,” of a foreign power. 2d. That, on a neutral vessel, with a neutral cargo, laden before.lhe institution of the block-ade, it is ‘‘an
 
 unlawful
 
 restraint.”
 

 The question, whether a blockade is a peril insured against is one on which the court has entertained great doubts. In considering it, the import of the several words used, in the clause has been examined. It certainly is not ?‘an arrest,” nor is it “a detainment.” Each of these terms implies possession of the thing by the power which arrest's or detains; and in the case of a blockade, the vessel .remains in the possession of th* master. B.ut the court does not understand the clause as requiring'a coricúrrence. of the three terms, in.order to constitute the peril described. They are to be taken severally; and if a blockade be a “restraint,” the insured are protected against it, although it be neither- an “arrest,” nor “detainment.”
 

 What, then, according to common understanding, is the meaning of the term, “restraint?” Does it imply, that the limitation, restriction, or confinement, must be imposed by those who are in possession of the person or thing which is limited, restricted, or confined; or is the term satisfied by a restriction, created by the application of,external force? If, for example, a town be besieged, and the inhabitants - confined within its walls by the besieging army, if in attempting to come out, they are forced back,would it be inaccurate to say they ■are
 
 restrained
 
 within these limits? The court believes it would not; arid, if it would not, then with equal pro¿
 
 *190
 
 priiíty may it bé said, when a port is blockaded, that the vessels within are confined, or restrained from coming out. The blockade force is not in possession of the vessels inclosed in the harbour, but it acts upon and restrains them. It is a
 
 vis major ¡
 
 applied directly and «factually to them, which prevents them from coming OUt of port. . This appears to the court to U, in correct language, “a restraint” of power imposing the blockade, and when a yessel, attempting to come out, is boarded and turned back, this restraining force is practically applied to such vessel..
 

 Although the word, as usually understood, would sfem to comprehend the case, yet this meaning cannot be sustained, if, in policies, it has uniformly received a different construction; The form of ¡this contract has been long settled, and the parties enter into it without a particular consideration of its terms. Consequently, no received constructions bf those terms ought to be varied.
 

 is, however, remarkable, that the industrious researches of the bar have not produced a single case, from the English hooks, in which this question has been clearly decided. In. the case of Barker v. Blakes, which has been cited and relied on at the bar, one of the points made by the counsel for. the underwriters was, that the abandonment was not made intime, and the court was.oTthat opinion. Although, in this case it may fairly be implied, -from what was-said by the judge, that a mere blockade is not a peril within the policy, still this dobs not appear to have been considered, either at the bar or By the bench, as the direct question in the. cause, noi was it expressly decided. The
 
 *191
 
 opinion^of the court-was, that the blockade constituted a total loss, which was occasioned by the detention of the- vessel, but that the. abandonment was not made within treasonable time after notice of that total loss.In forming.this opinión, it. had not become necessary to inquire, whether the blockade,, unconnected with the detention, was, in itself, a peril against-which.the poUcy provided. The judgment Of the court, could not be in the most remote degree, influenced by the result of this inquiry; and, consequently, it'was not made., with that exactness of investigation- which would probably have been employed, had the case depended on it. It is. also to be observed, that the vessel did nofatternpt to proceed, towards the broclsaded port, but lay in Br?S* iol when the abandonment was made. The blockading squadron-, therefore, did not act directly on the vessel, aor apply to her any physical forcé. It is not certain that such'a circumstance might; not.have materially-affected the cáse... This court, therefore, does,not consider the question as positively decided, in Barker v. Blakes.
 

 The decisions of our own country would be greatly respected, were they uniform; but they are in contradiction to each other. In New-York, it has been held, that a blockade
 
 is,
 
 and in Massachusetts,.that-iiis
 
 not, a
 
 peril within the policy. The opinions of the. judges, of both these courts are, on every account, entitled to thehigfrest consideration. But they oppose each other» and are not given in cases precisely similar to that now before this court. The opinion that a blockade was not a restraint, was held by'the courts of Massachusetts; but was expressed by the very eminent judge who then*'
 
 *192
 
 presided in that court, in a case where the vessel was not confined within a blockaded port-by the direet and immediate application of the physical- force to the vesSel hwrself.
 

 Believing this case not in Faye .been expressly decided the court has inquired hoW’far it ought to be influenced by Jts analogy-to principles which have been settled.
 

 It has been determined in England that if the port for ■ which a vessel sails bejsbut against her by the government of the place, it is not a peril within the policy. In Hadkinson v. Robinson, a vessel bound to Naples was carried into a neighbouring port by the-mastet in co&se- > tpience of information redS&ved at sea that the port of Naples was shut agáinst English vessels. In an action against the underwriters the jury found a verdict for •the defendants, and, on- a motion for a new trial, the’ COurl said “a loss of the-voyage, to warrant the insured to abandoB must be ocCSsioued by a peril acting upon the. subject matter • of the .insurance immediately, and not circuitously,as in the'preseni case. The detention of the ship at: a neutral port, to avoid the danger of entering the port of destination cannot create a total loss -within the'policy, .because it does notarise from-any peril insured against.?’
 
 a
 

 It will not Be denied that this case applies in principle to the case of a vessel whose voyage is broken up by the act of the master bn.hearing- that his'port of. destination is blockaded The peril- acts directly - oh the vessel not more in thé- one case than in the other. Bui-if,-in.attempting to pass the blockading
 
 *193
 
 squadron, the vessel be stopped and turned back: thíe force is'directly applied to her, and does act directly and hot circuitously.
 

 ■ Without contesting or admitting the reasonableness ° . of’the opinion, that th£ less of the voyage occasioned by the’detention of the'ship by her master in a neutral port is hot within the policy, it’ may well be denied to follow as a corrollary from it, that a vessel confined in port by a blockading squadron,and actually prevented by that squadron from coming pttk, does not sustain the loss of her voyage from the restraint' of a foreign power,- which is a peril insured against;
 

 Lubbock v. Rowcroft, which was decided at
 
 ftisi'pKP■us,
 
 is in principle no more than the, c^se of Hadkinson v. Robinson. Having heard that, his port of destination was blockaded fyy, or in -possession of, the enemy, the master stopped in a different port, and the insured abandoned. The loss was declared to be produced by a peril not within the policy., ICii.únnecessary to repeat the observations which were made on the case of Hadkinson v. Robinson.
 

 An embargo is admitted to be a peril within the policy.- But as has been already observed-, the sovereign.' imposing the embargo is virtually in possession of the vessel, and may, therefore, be said to. arrest and detain her.- Yet,' in fact, the vessel remains in the actual possession of the master or owner, and has the physical power to sail out and proceed on her voyage. The* application of force is not more direct on a 'vessel stopped in port bj an embargo, than on a vessel stopped in port by a blockading squadron.- Thé danger of attempting to.violate a blockade is. as great as the
 
 *194
 
 danger of attempting to violate an embargo. Thtf voyage is as' completely broken np in one case, as is the other, and in both the loss is produced by. the act of a sovereign power. There is ¡¿s much reason for insuring against the one peril as[ agains-t the other; and if'the' word restraint does
 
 not
 
 necessarily imply possession of the thing by. the restraining poyver, it must' be construed to comprehend the.forcible confinement, of a vessel in port, and the forcible prevention of her proceeding on-her voyage. If so, the blockade is in such a case a peril within, the policy.
 

 The .next point to be decided is the unlawfulness: of this restraint.
 

 That a bel] gerent may lawfully blockade the port, .o,f his endmy. is admitted. But it' is also admitted that this blockade does not, according to modern usage extend to a neu.ral vessel, found in port,- nor prevent her coming out with the cargo which was on board when the blockade was instituted.' If,- then;- such a vessel be restrained from- proceeding on .her voyage by' the blockading squadron, the restraint ■ is unlawful.' ■T.he St, Francis de Assise was so restrained, apd her case is within the policy. .
 

 It has'been- contended that it was the duty of the neutral master to show-to-the Visiting, officer 6f the'belligerent squadron his right of egress, by showing not only the neutral character of his vessel and cargo,, but that his cargo was taken oh -board, before- the institu- - tiop of the blockade.
 

 This is admitted; and-it is believed that the hill of. exception's shows satisfactorily that. these - facts were proved to the visiting; officer. It .is stated that the
 
 *195
 
 vessel and caigo were regularly documented; that 'he papers were shown, and that the cargo was put on board, and the.vessel had actually sailed on her voyage, before the Institution of the blockade,
 

 There is, however, a.áaaterial fact which is nopstated in the bill of exceptions with perfect clearness. The loss, in this case, is technical, and the bo art has decided that such loss must continue to the time of abandonment.
 
 a
 
 ■ It is not necessary that it should be known to exist at time of abandonment, for that isdmpossible ; but that.it should actually exifct; a fact which admits of affirmative or negative proof at the trial of the. cause. Upon the application of this principle to this case, much diversity of opinion has prevailed. One judge is, of opinion that the rule, having been laid down in a case of capture, Is inapplicable to a loss sustained by a blockade. Two judgesa re of opinion that proof of the existence of the blockade having been made, by the plaintiff, his case is complete and that the proof that it was raised before fhe abandonment ought to come from the other side. . A fourth judge-is of opinion, that connecting with the principle last' mentioned, the fact stated in the bill of exceptions that the abandonment was “id due'and reasonable time,” it must be taken t.O' have been made during the existence -f the technical' loss. Four judges, therefore, concur in the opinion that.the plaintiffs are entitled to recover; but as the.y form this opinion on different principles, nothing but the case itself is decided : That is, that a vessel within a port blockaded after the commencement of her voyage,
 
 *196
 
 and prevented from proceeding on it, sustains a'loss by ,a peril witbip the'policy ; and if the vessel so prevented, be a, neutral, having bn board a neutral cargo re' ceived before the institution of the blockade, the re^rajn^. -js unlawful.',
 

 J udgrae-nt reversed.
 

 On the question of blockade-three things must be;proved : 1st the existence of án actual blockade; 2dly," The knowledge of the party ; apd, ■3dly. some act of violation, .either by going in, or by' coming out with a cargo laden
 
 after
 
 the commencement of ■blockade. The Betsey, 1
 
 Rob.
 
 93.
 

 The government and courts of the United; States have constantly maintained, “that ports not actually blockaded by a present, adequate, stationary force, employed by the power which attacks them, shall not be considered as'shut to neutral trade in articles not. contraband of war;.that", though it is usual for a belligerent to give notice to neutral nations, when lie intends to institute a blockade,-it is possible that he may. not act upon his intention at'all, or that he may execute it insufficiently, of that he may discontinue his blockade, of which it is not customary to give1 any notice: that consequently, the presence. of the blockading force is'the natural criterion by which the - neutral . is enabled to ascertain the xistence of the blockade at any given.,period, in like manner as the actual investment'of a'bfcsieged place is the evidence by which we decide whether .the siege, .which may be commenced, raised, recom'mencéd, and raised .again,-is continued or not; that of course a. mere notification to a neutral minister, shall not be relied upon', as affecting with knowledge of the actual existence of the block- : ade, eilher'his government or its citizens : that a vessel cleared or bound to a blockaded port, shall not be considered as v.iolatmg-in any manner, the blockade, unless, on her approach towards snch port, she shall haye been previously warned not to enter it; that this view pf the law, in itself
 
 *197
 
 perfectly correct, is peculiarly important to nations,situated at a great distance from the belligerent-parties, and,'therefore, incapable of obtaining other, than tardy information of the - actual' state of their
 
 ports\
 
 that whole coasts and countries shall not be declared, (for they c¿n never be more-than deciar- - ed) to be in a state of- block- , ade, and thus the right of blockade converted-into the means of extinguishing the trade of neutral nations; and. lastly, that every blockade shall be impartial- in its operation, or,,, in other words, shall not'open and shut fo.r theconvenience of the -party that institutes it, and at the same .time repel the commerce of the rest of the world, so as to. become the odious instrument of an unjust monopoly, instead of a measure of honourable war.”' For the conduct of.the •government in this respect, see the documents in the
 
 Appendix
 
 to this volume, note 1.' The decisions of the courts, are collected, in ■ Mr. Condy’s edition of Marshall on Insurance voh.l. p. 81. note (3.) To the cases there cited, add the following: Williams v. Smith,
 
 2 Caines’ Rep.
 
 1 Radcliff v. The United Insurance Company, 7
 
 Johns. Rep.
 
 38.
 

 .I.n the case of Fitzsimmons v. The Newport insurance company, (4
 
 Cranch,
 
 185. 198.) it'was laid down by this court, that the 18th article of the .treaty of 1794, between the United States and Great Britain, seems to be a correct exposition of the law of nations, and'is admitted by the parties to the treaty, as between themselves, to be a correct exposition of the law, or ta constitute a rule in that place" of it. “Neither the'law ,of nations, nor the treaty, admits of the condemnation of a neu-r tral vessel for the,intention to enter a blockaded port u,n-connected with any fact. Saiting for a blockaded popt,know-ing it to be blockaded, ha? been in some English- .cas,eg construed into an attempt to enter thatport, únd has, there-: fore, been adjudged a breach of the blockade from the daparture'.‘of the vessel. W-ititout giving any opinion on that point, it may be observed,.that in such cases, the fact.ofsailing is coupled with the
 
 inten^.
 
 ¿ion,' and the sentence of condemnation is founded oh an actual breach of blockade.^
 

 
 *198
 
 “It is impossible to tead that instrument, (the treaty) withoutvpercerving a¡ clear intention in the parties to it, that after notice of the blockade, an attempt to' enter the port must be made, in order to subjbct the Vessel to'confiscation, By the language of the treaty it-would appear, that a second attempt to enter the. port must be made, in order to subject the vessel to confiscation.” “It is agreed,” says'that instsument, “that every vessel so .circumstanced” (that is, every vessel sailing for the blockaded port, without knowledge of the' blockade) “may be turned av ay from such port or place, but she shall not be detained, nor her cargo, if not contraband, be. confiscated, unless after notice she shall again attempt to enter.”
 

 As to violating a blockade by. coming out • with a cargo, the time of shipment is very material, for although it might be hard to refuse-a neutral liberty to retire, with a .cargo already laden, and by that act already become neutral property; yet after: the commencement of a blockade, a neutral • cannot be allowed to interpose in any way to assist the exportation of thf; property of the enemy, After the commencement of the blockade, a neútral is no longer at liberty t<j make any purchase in that port. The Betsey, 1.
 
 Rob.
 
 93. The Frederick Molke, Id. 72. The Neptunus,
 
 Id.
 
 180. A neutral ship departing can only take away a cargo
 
 bona fide
 
 purchased and delivered before the con}mehcement of the blockade: if she afterwards take on board a cargo, it is a violation of the blockade. The Vrow Judith,
 
 Id.
 
 1
 
 Rob.
 
 150. The Rolla,
 
 6 Rob.
 
 364. Where a ship was transferred from one.neutral' merchant to another in a blockaded port, and sailed out in ballast, she was determined not to have violated the blockade. The Potsdam, 4
 
 Rob.
 
 39. The Juffrouw Maria Schroeder, Id. note (a.) But a ship which had been purchased by a neutral of the enemy in a blocka». ded port, and' sailed , from 'thence on a voyage to.the heutral country, was held liable to condemnation. The Genera Hamilton, 6
 
 Rob.
 
 61. And where the vessel was captured on a voyage to the blockaded port, in bailas!, she having sailed, for the purpose of bring» ing away goods which had become the properly of neutral merchants • before. thed,ate
 
 of
 
 the blockade, she was held liable to condemnation. Tbefflle
 
 *199
 
 of blockade permits an egress tojjhips innocently in the port before the restriction was imposed, and even with cargoes, if previously laden; but in the case of
 
 ingress,
 
 there is not the same, reason for indulgence ; there can be no surprise upon the parties, ánd, therefore, nothing short of a physical necessity is admitted as an adequate excuse for making th.e attempt of entry. The Comet,
 
 Edwards,
 
 32. A maritime blockade, is not -violated by sending goods to the blockaded port, or by bringing them from the same, through the interior canal navigation of the coup-try'. A'mere maratimeblockadp, effected by a force operating only at pea., can have no operation .upon the interior communications of 'the port, The Ocean,
 
 3 Rob.
 
 297. The Stert, 4
 
 Rob. 65.
 
 Tut goods shipped in a river, having been previously, sent in lighters along the coast from the blockadcd port, and under charter-party with the ship proceeding also from the blockaded -port inballasttotake.themonboard were held liable to- confiscation. The Maria, 6
 
 Rob.
 
 201. The penalty for . a breach 'of blockade is remitted by the raising of the blockade between the time of sailing from the port and the cápture. __ When the blockade is raised, a veil is thrown over every thing that has been doné,' and the vessel. is no longer. taken,
 
 in delicto.
 
 The
 
 delirium
 
 completed at one period ic ^ subsequent events entirely'done away. The Lisette, 6
 
 Rob.
 
 387. A neutral ship coming.out of a blockaded port in consequence of .a rumour that hostilities w.ere likely to take place between the enemy and the country . to which the ship belongs is not liable, to condemnation,though laden with a cargo, where the regulations of the enemy would not permit a departure in'ballast. The Drie Vrienden,
 
 Dodson,
 
 269. But the danger of seizure and confiscation by the enemy, must be.immediat
 
 e
 
 and pressing. The mere apprehension of possible and remote 'danger, will not justify’ bringing a cargo out of a blockadedport. The Wasser Hundt,
 
 Id.
 
 270. note.
 

 a
 

 3
 
 Bos.
 
 &
 
 Pul.
 
 388.
 

 a
 

 See Rhinelander v. The Ins. Com. of Pennsylvania, 4 Cranch, 29. Marshall v. Delaware Ins. Com.
 
 Id.
 
 202. Alexander v. The Baltimore Ins. Com.
 
 Id.
 
 370.