The opinion of the court was delivered by
Tilghman, C. J.
The plaintiff was employed by the defendant, as an agent to effect insurance on goods on board the ship Cordelia, on a voyage at and from Teneriffe to Sourabaya, and at and from thence to Philadelphia. Insurance was effected accordingly, and the promissory note on which this suit was brought was given by the defendant, to indemnify the plaintiff from loss, by his responsibility for the premium of insurance. The defence set up against the plaintiff is, that through his negligence the insurance was made in so improper a manner that the defendant derived no benefit from it, although, the goods were lost. The fault in the insurance was this: — instead of insuring, as usual, against all losses by arrests, restraints, and detainments by kings, princes, &c., the insurance was only against all unlawful arrests, restraints, &c. The goods were lost, in consequence of the port of Sourabaya being blockaded by a British squadron; but the blockade being lawful, it was decided, in a suit brought against the insurers,that the insured could not recover. But the plaintiff contends, that under the circumstances of this casé, the insured could not have recovered if the policy had been drawn in the usual way, that is to say, if the word unlawful had been omitted. Whether, in such case, the insured could have recovered is the question to be now decided. The Cordelia having sailed on the voyage insured, had got within twelve hours’ sail of her port, when she was boarded by a British ship of war belonging to a squadron blockading the island of Batavia, and forbidden to enter. In consequence of this, the master relinquished the voyage and proceeded to Philadelphia, upon his arrival at which place the insured abandoned.
The plaintiff’s counsel insist, that there was no loss by any peril insured against, that there was neither capture, arrest, restraint, or detainment; but the voyage was relinquished merely from the fear of capture.
The question is new in this court, and not without difficulty, nor can it be said to be settled either in England or the United States; for judges of great eminence have held different opinions. The general principle is agreed, that if the voyage is relinquished merely through fear of capture, the loss is not covered by the policy; but it is held by some, that if the danger is so great as to amount almost to a certainty of capture, it is a peril for which the insurer is responsible, a restraint within the meaning of the policy. That this should be the law, is certainly for the interest of all parties: if the voyage is abandoned, the property is sayed and *443 ceded to the insurers; but what advantage can it be to them for the Insured to rush into danger with the certainty of loss? There seems to be a difference between arrests, restraints, and detain-ments. An arrest operates immediately on the subject arrested, so does a detainment; for it supposes the subject detained to be in the hands of the detainer. But there may bé a restraint where the subject restrained is not in the hands of the restrainer. Capture includes an arrest. Capture, strictly speaking, is generally made for the purpose of condemnation; but neutrals are often arrested and carried into port for the purpose of investigation. An embargo is a detainment, as well as a restraint. But a blockade may be a restraint without arrest or detainment. In the case before us, there was more than the restraint of well grounded fear. The ship was in the hands of a British cruiser, and thus prevented by actual force, from entering the port of Sourabaya. This force was indeed withdrawn, but only for the purpose of suffering the ship to go on a different voyage. The blockade was continued with a force sufficient to prevent an entry, and this was certainly a strong and effectual restraint. It would seem therefore, upon a fair construction, this loss fell within the scope of the policy, unless the meaning of the word restraint had been otherwise settled-by adjudged eases. I do not know, that in the English books a case is to be found exactly like the present. In Hadkinson v. Robinson and Lubeck v. Rowcroft, cited in 1 Marsh. 219, 220, the ship stopped at a port short of the port of destination, and there gave up the voyage on receiving intelligence that the destined port was shut against her. But there was no force actually applied. It was decided that these losses were not by any peril insured against. In Barker v. Blakes, an American ship being bound to a French port, was taken and carried into England, and, while detained there, information was received that she could not enter the French port. Being afterwards restored by a decree of the English court, it was held that the loss was within the policy. But it was not decided how the law would have been, if the ship had not been carried into England, but relinquished the voyage on hearing that the port to which she was bound was shut against her. In Blackenhagen v. The London Insurance Company, 1 Campb. 454. Marsh. 838, note 135, an English ship bound to Revel, altered her voyage on hearing that a hostile embargo was laid on English ships in all the ports of Russia. Held, that the insurers were discharged whenever the voyage was altered, because fear of capture was not a peril within the policy. In Parker v. Tunno, Marsh. 839, an English ship was insured for Monte Video, or any other port or ports in the river Plate, in the possession of the English. When she arrived in the river Plate, Monte Video, and every other port except Maldonado, was in 'the hands of the enemy (Spain,) and the English commander of Maldonado ordered the ship immediately away, whereupon she *444 proceeded straight to Rio Janeiro, the nearest friendly port, It was held that the insurers were discharged, because they hi ’ insured no other voyage than to some port in the river Plate. These are all the English cases which seem to bear on the point. None of them come exactly up to ours, because in none of them was the ship prevented by actual force from pursuing her voyage. Yet I should rather suppose, from the reasoning of the judges, that they inclined to the opinion, that even if there was a boarding for the purpose of giving notice of an embargo, and a consequent relinquishment of the voyage, this would not constitute a loss covered by the policy. This was the decided opinion of the Circuit Court of Massachusetts, as appears by the opinion delivered by the late Chief Justice Parsons, in Richardson v. The Marine Insurance Company, 6 Mass. Rep. 102; and that court still adheres to the same opinion, as we see in the case of Brown v. The Union Insurance Company, 12 Mass. Rep. 170. But the contrary opinion is as decidedly held by the Chief Justice of New York, as appears by the cases of Schmidt v. The United States Insurance Company, 1 Johns. 249, and Salters v. The United States Insurance Company, 15 Johns. 523. Between such respectable authorities of our own country, it would be hard and unpleasant to decide, were we not relieved by a decision of the Supreme Court of the United States, which turns the scale. I allude to the case of Oliveira v. The Union Insurance Company, 3 Wheat. 183, where the contested principle was brought fully before the court, and directly decided. The United States and Great Britain being at war, and Spain neutral, a Spanish ship bound outward was turned back by a British squadron blockading the bay of Chesapeak. It was decided, that this was a restraint within the meaning of the policy. Chief Justice Masshalu, by whom the opinion of the court was delivered, after saying that a blockade was a restraint, adds, that “ where a vessel attempting to come out is boarded and turned back, this restraining force is practically applied to such vessel.” He also says, (speaking of a vessel prevented from entering a blockaded port,) “but if, in attempting to pass the blockading squadron, the vessel is stopped and turned back, the force is directly applied to her, and acts directly and not circuitously.” It appears, then, that the weight of authority in our own country, supports what we take to be the true meaning of the word restraint. The Cordelia, therefore, lost her voyage by a peril insured against, when she was boarded and turned back from the port of Sourdbaya. What she did afterwards, was for the benefit of the insurers. But it is contended further, on behalf of the plaintiff, that his case case is strengthened by the warranty in this policy, that the property was neutral, in consequence of which the insured was obliged to conduct himself as a neutral throughout the voyage, and could not have attempted to break the blockade without a breach of warranty. It is true, that the in- *445 saved was bound to conduct himself as a neutral, but it does not follow that therefore the insurer was discharged from the peril of blockade. The insured engaged that he would not break the blockade, but he did not engage that he would bear the loss resulting from the blockade. In the present instance, it is to be presumed that he did nothing against the duties of neutrality, or the cruiser who boarded him would have made prize of him. Suppose the Cordelia had been seized, on suspicion of being loaded with property of the enemy, and ordered to a British port for adjudication, it would have been her duty to make no resistance, but the insurers would have been liable for the loss. I cannot perceive, therefore, why the insurer should be discharged in the present case, because the insured was bound not to- break the blockade. The warranty still answered a valuable purpose. By preventing the breach of the blockade, it saved the property of the insurer.
It is the opinion of the court, on the whole, that if the word un~ lawful had not been inserted in the policy, the insured might have recovered on it; and therefore judgment should be entered for the defendant.
Judgment for the defendant.