## VIGERS ET AL. *vs.* THE OCEAN INSURANCE COMPANY.

### APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT.

A vessel which proceeds on her voyage, and is prevented from entering her port of destination by a blockading squadron, which requires her to put back to the port of departure, sustains a loss by a peril insured against, under the clause in the policy, insuring against " the arrests, restraints and detainments of kings, etc." for which the insurers are liable.

Where the *vis major*, or blockading force, applies so directly and effectually as to break up the voyage, it is a *restraint* within the terms of the policy, although not attended by any actual seizure or arrest.

So, where insurance was upon merchandize, in a schooner bound from New-Orleans to Tampico, against the usual sea risks, and against " arrests, restraints and detainments of all kings, princes or people, of whatever nation, etc. ;" and on her arrival off the bar of Tampico, she was

boarded and ordered away by the officers of the French blockading squadron, and compelled to return : *Held*, that the insurers were liable, and that the insured had the right to abandon and recover, as for a technical, total loss.

This is an action on a policy of insurance. The plaintiffs allege that on the 5th of April, 1838, they made insurance at the office of the defendants, in the city of New-Orleans, on merchandize, valued at eleven thousand three hundred and sixty dollars, on board the schooner Sarah Ann, from New-Orleans to Tampico, in the republic of Mexico ; that said vessel arrived off Tampico, and was prevented entering the port by a blockading squadron of the French government, which prevented and still prevents the entrance of all vessels into that or other ports of Mexico ; that by reason thereof the voyage was broken up and terminated, and on the return of the vessel with her cargo to the port of departure, after due proof made of the facts aforesaid, the petitioners abandoned their interest in the said merchandize, to the insurers, who have refused to accept the abandonment thereof. They pray judgment for the said sum of eleven thousand three hundred and sixty dollars, with damages, interest and costs.

The defendants pleaded a general denial, and averred, that even admitting the allegations to be true, the plaintiffs have no cause of action.

On these pleadings and issues the case was tried.

The clause in the policy on which the case turns, is as follows: "Touching the adventures and perils which the Ocean Insurance Company of New-Orleans is contented to bear and take upon itself in this voyage, they are of the rivers, seas, men of war, fires, enemies, pirates, rovers, thieves, jettisons, letters of marque and counter-marque, surprisals, takings at sea, arrests, restraints and detainments of all kings, princes or people, of what nation, condition or quality soever, barratry of the master and mariners, and all other perils, losses and misfortunes that have or shall come to the hurt, detriment or damage of the said goods and merchandize, or any part thereof."

The protest sets out the existence of the blockade, and the ordering off and return of the vessel, as follows :

Proceeded without any material occurrence until the 21st of April, when at nine, A. M. they made the land at Point Alamira.   At two, P. M., 22d, land account, they were brought to, and boarded by the French brig of war, La Peyrouse.  The boarding officer Monsieur Henry, notified the master, that all the Mexican ports were under strict blockade, by the squadron of the ships of war of the government of France ; ordered him to leave the coast with his vessel, and immediately endorsed said notification on the roll of equipage of said schooner, with warning not to attempt the entrance of any of the ports of Mexico, unless at the risk and peril of the vessel.   The master having then obtained leave from the boarding officer, to be taken on board the brig of war, demanded of her commander to be allowed to anchor, which was refused, unless the crew of the schooner should be put on board the brig of war.   The master then made known to the commander of the brig, that he had not sufficient supplies to take back his passengers, twenty-four in number, and requested permission to land them, which was also refused. Not being allowed to anchor, and having a compliment of thirty-two persons, (crew and passengers included,) short of supplies for any lengthened term of voyage, and fearful of the consequences of remaining on an exposed coast, without any prospect of relief, the brig keeping them constantly under her guns, the master was compelled, by the force of circumstances, to return to this place, having first ascertained that all the other Mexican ports were strictly blockaded."

Upon this evidence, the district judge gave judgment for the plaintiffs.   The defendants appealed.

*Eustis*, for the plaintiffs, contended : 1st, The blockade of the port of destination by the naval force of the king of the French, was not constructive, or a paper blockade ; it was in every respect legal and actual, and the vessel was forcibly prevented from entering the port.

EASTERN DIST.
June, 1838.

VIGERS ET AL.
vs.
OCEAN INS. CO.

. 2. It is useless to examine the foreign decisions on this subject. The contract must be construed according to its intendment, under the Law Merchant of the United States. See the cases of *Brooke et al.* vs. *Louisiana State Insurance Company.* 5 *Martin, N. S.,* 536. *Barry* vs. *Louisiana Insurance Company,* 12 *Martin,* 499.

3. The decisions in Pennsylvania and New-York, and in the Supreme Court of the United States, are uniform in favor of the right of abandonment, on the part of the insured, on the breaking up of a voyage by an actual blockade of the port of destination. They are stated and commented on in the Treatise of Mr. Phillips, vol. 1, pages 260 and 275, who adds to them the weight of his opinion.

4. The fact of the risk of the blockade of the port of destination being excepted in the policies of insurance of several of the offices in this city, shows, that in policies in which the exception is not made, the risk is assumed.

5. By the continuance of the blockade, which is proved to exist, the voyage is absolutely lost. No question can arise as to any partial loss under this state of facts.

*Conrad,* for the defendants, insisted : 1st. That this is still an open question ; that it has not yet been settled in the United States, or if settled, the decisions are adverse to the plaintiffs' claims.

In Massachusetts, the courts have invariably applied the principle, that a fear of a peril insured against, no matter how reasonable or well grounded, will not make the underwriters responsible, to the case of a blockade of a port. These cases are collected and collated in 1 *Phillips on Insurance, page* 262, 263, 264, 265, etc. *Hughes on Insurance, page* 183.

2. In England, no case can be found where the underwriter has been made responsible for a loss by the blockade of the port of destination. There are several against it. *Hughes, page* 262.

3 On the continent of Europe, the underwriters are not responsible for it, as included under the term " *arrêt de prince.*"

2 *Valin's Commentaries, lib. 3, tit. 6, des Assurances, article 49, 50, 51, page 227. Emerigon, chapter 12, section 30, page 535.*

4. At any rate the plaintiffs can only recover a partial loss. The goods are safe and in the possession of the insured. See *Marshall on Insurance, vol. 2, page 560, 561. 3 Kent's Commentaries, 266. Emerigon, vol. 1, chapter 12, section 31, page 542.*

*Bullard, J.,* delivered the opinion of the court.

This case presents the question of a right to abandon as for a total loss on the part of the assured, under the following circumstances:

The insurance was upon merchandize on board the schooner Sarah Ann, bound from New-Orleans to Tampico, in the republic of Mexico, and against the usual sea risks and also against "arrests, restraints, and detainments of all kings, princes, or people, of what nation, condition, or quality soever," etc. On the arrival of the schooner off the bar of Tampico, she was boarded by an officer from the French squadron, then and yet employed in a vigorous blockade of Tampico and other Mexican ports in the Gulf, who gave formal notice to the master of the schooner, that all the Mexican ports were under strict blockade, by the squadron of ships of war of the king of the French; ordered him to leave the coast with his vessel, and endorsed the notice upon the *rôle d'Equipage* of the schooner. Permission was refused to come to anchor, or to land the passengers, or to take in supplies. Under these circumstances, the master of the schooner, after remaining for some time under the guns of a brig of war belonging to the French squadron, returned to New-Orleans. It is admitted, that the blockade still continues, and the evidence shows, that it is rigorous and with an adequate stationary force.

It appears to us clear, that any further attempt to enter the port of destination on the part of the schooner, might have been followed by a forfeiture of the vessel and cargo, without any recourse upon the underwriters, and that the master could not have gone to any other port, without

equally forfeiting his insurance. He had, therefore, no alternative left but to return to the port of departure, and the voyage or adventure was entirely broken up; not by a vague apprehension of danger, but by a direct application of superior force. It was a restraint, in our opinion, according to a sound construction of the policy of insurance.

If the question presented by this case, was at one time unsettled, and the decisions of state tribunals, variant if not contradictory, as would appear from the cases to which our attention has been called in the argument, we cannot but consider it as now at rest by the highest judicial authority of the Union. The case of Olivera vs. the Union Insurance Company, decided by the Supreme Court of the United States, 3 *Wheaton*, 183, cannot be distinguished in principle from this. The only difference in point of fact is, that in that case, the vessel was prevented from leaving the Chesapeake, upon her destined voyage by a blockading squadron, and in this, the schooner was restrained from entering her port of destination, after having nearly completed her voyage. The same force was applied, the same notice given, and in both cases, the vessel was compelled to put back to the port of departure. If instead of a blockade of Tampico, it had been a blockade of the mouths of the Mississippi, and the schooner had been compelled to return from the Balize, the two cases would have been in every essential particular identical. In the case of Olivera, the vessel had sailed from the port of Baltimore bound to the Havana, and on its approaching the mouth of the Chesapeake Bay, was boarded by one of the frigates belonging to the blockading squadron, and notified of the blockade, and ordered to return to Baltimore. The reasoning of the great magistrate, who, at that time stood at the head of the federal judiciary, in delivering the opinion of the court, applies equally to both cases. The court considered, that a case of *vis major* applied directly and effectually so as to break up the voyage, and that it was a restraint within the terms of the policy, although not attended by any actual seizure or arrest. In commenting on the case of Barker vs. Blakes, the chief justice remarks,

A vessel which proceeds on her voyage, and is prevented from entering her port of destination by a blockading squadron, which requires her to put back to the port of departure, sustains a loss by a peril insured against, under the clause in the policy, insuring against "the arrests, restraints and detainments of kings," etc., for which the insurers are liable.

Where the *vis major*, or blockading force applies so directly and effectually as to break up the voyage, it is a restraint within the terms of the policy, although not attended by any actual seizure or arrest.

So, where insurance was upon merchandize in a schooner, bound from New-Orleans to Tampico, against the usual sea risks, and against "arrests, restraints and detainments of all kings, princes or people of whatever nation," etc., and on her arrival off the bar of Tampico, she was boarded and ordered away by the officers of the French blockading squadron, and compelled to return : *Held*, that the insurers were liable, and that the insured had a right to abandon and recover, as for a technical, total loss.

"that the court of King's Bench thought the blockade of the port of destination constituted a total loss, which was occasioned by the detention of the vessel, but that the abandonment was not made in proper time." It is also to be observed, he adds, " that the vessel did not attempt to proceed towards the blockaded ports, but lay in Bristol, when the abandonment was made. The blockading squadron therefore did not act directly on the vessel, nor apply to her any' physical force. It is not certain that such a circumstance might not have materially affected the case." What the chief justice supposes might have happened, and have made a material difference in that case, actually took place in the one now under consideration. The force was directly applied to the vessel when on the point of terminating her voyage, and she was restrained from entering by a force which could neither be resisted nor evaded with safety. That the same restraint still exists is not only shown in the record, but is a matter of notoriety, and it is impossible to predict how long it may continue. Under these circumstances, we are of opinion, that the plaintiffs are entitled to recover as for a technical total loss.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.