## THE ATHANASIOS.

### (District Court, S. D. New York.   November 15, 1915.)

1. ADMIRALTY ☞47—SUIT IN PERSONAM—PROCESS WITH FOREIGN ATTACH-
MENT CLAUSE.

   Process in personam against the nonresident owner of a foreign vessel,
   with clause of foreign attachment, will not be issued, where the respond-
   ent offers to enter appearance and does so before allowance of process.

   [Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 396–403; Dec.
   Dig. ☞47.]

2. SHIPPING ☞51—RELEASE OF VESSEL FROM CHARTER—"RESTRAINT OF
PRINCES."

   A Greek vessel, chartered in a port of the United States by a charter
   party containing the usual exemption from liability for "loss or damage
   occasioned by  *  *  *  arrest and restraint of princes, rulers, or people,"
   is released from the obligations of her charter where, before proceeding
   to her loading dock, she was requisitioned by the kingdom of Greece for
   government service by orders transmitted through its legation in Wash-
   ington and consul general.

   [Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 203–210; Dec.
   Dig. ☞51.]

3. ADMIRALTY ☞1—DISCRETIONARY JURISDICTION—SUIT IN REM AGAINST
FOREIGN VESSEL REQUISITIONED BY HOME GOVERNMENT.

   Semble, that a court of admiralty of the United States should for politi-
   cal reasons refuse to entertain a suit by a Canadian corporation against
   a Greek vessel requisitioned for use by the Greek government.

   [Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 1–17; Dec.
   Dig. ☞1.]

In Admiralty.   Suits by James Carruthers & Co., Limited, against
the steamship Athanasios, N. D. Lykiardopulo, claimant, and Bowring
& Co., and against N. D. Lykiardopulo, as owner of said steamship, in
personam.   Libels dismissed.

On October 16, 1915, at New York, the Greek steamship Athanasios was
chartered to James Carruthers & Co., a Canadian corporation, to carry a cargo
of grain from a port in the United States to a port in Europe.   The charter
recited that it was between H. Clarkson & Co., agents for owners, and was
signed by Bowring & Co., "as agents by cable authority of H. Clarkson & Co.,
London."   Subsequently the words "H. Clarkson & Co., agents for" were de-
leted from the body of the charter, and the owner's name, N. D. Lykiardopulo,
substituted.   The words "H. Clarkson & Co., London," were also deleted after
the signature of Bowring & Co., and the word "owners" substituted.

A printed clause was pasted on the charter providing: "The ship, in addi-
tion to any liberties expressed or implied herein, shall have the liberty to com-
ply with any orders or directions as to departure, arrivals, routes, ports of
call, stoppages or otherwise, howsoever given by his majesty's government or
any department thereof, or by any committee or person having, under the terms
of the war risks insurance on the ship, the right to give such orders or di-
rections, and nothing done or not done by reason of such orders or directions
shall be deemed a deviation."   It was also provided in the body of the char-
ter: "It is also mutually agreed that this contract shall be completed and be
superseded by the signing of bills of lading on the same form as in use by
regular line steamers from loading port to port of destination; or, if port
of destination be one to which there is no regular line of steamers from
loading port, this contract shall be superseded by the signing of bills of
lading in the form customary for such voyages for grain cargoes, which bills

of lading shall, however, contain the following clauses: (1) 'It is also mutually agreed that the carrier shall not be liable for loss or damage occasioned by * * * arrest and restraint of princes, rulers or people. * * *'"

The vessel arrived at the port of New York on October 29th. While the steamer was at New York, off the Statue of Liberty, the master was advised by the Greek consul general that the vessel had been requisitioned by the Greek government under orders received from the Greek legation at Washington. In consequence of these orders the vessel did not load for the charterers. The charterer filed a libel against the steamer and against Bowring & Co., as agents for an unknown owner, and the vessel was seized by the marshal under process in rem.

The first of the actions above named was begun by filing the libel on November 1, 1915. Process in rem issued against the Athanasios, which was seized within the jurisdiction of the court, and is still in custody, with security demanded in the sum of $75,000. Bowring & Co. appeared on November 9th, and on November 10th the answer of "Bowring & Co. and of N. D. Lykiardopulo, claimant of the S. S. Athanasios," was filed. On November 10th the trial of the action was begun; motion to that effect having been made and granted on the ground that the ship was in custody and her claimant unable to give the security demanded.

At or shortly after the beginning of this trial counsel for libelant stated in open court his intention of filing a libel in personam for the same cause of action against the owner of the Athanasios, whose name had been revealed by the answer in action in rem. It was thereupon stipulated between counsel that all testimony taken under the pleadings in the first suit should be considered as taken also in the second suit. The trial continued to November 11th, when the libel in the second suit was filed in open court, and a motion made by libelant for process with a clause of foreign attachment. Counsel for N. D. Lykiardopulo immediately offered to appear, and on November 12th an answer in the second suit was filed and the trial and argument of both cases concluded.

Travis & Spence, of New York City, for libelant.

Charles R. Hickox and Kirlin, Woolsey & Hickox, all of New York City, for Bowring & Co., N. D. Lykiardopulo, and steamship Athanasios. Frederic R. Coudert and Howard Thayer Kingsbury, both of New York City, amici curiæ, representing the charge d'affaires of Greece in the United States of America and the consul general of Greece in the city of New York.

HOUGH, District Judge (after stating the facts as above). [1] The motion for process with clause of foreign attachment is denied. The practice is correctly outlined in Benedict's Admiralty, § 353 et seq., which is little more than a statement of the traditional law as contained in the briefs of counsel in Atkins v. Fibre & Co., 18 Wall. 292, 21 L. Ed. 841. For an instance in this court of how far this form of process depends on known possibilities of procuring appearance, see Shewan v. Hallenbeck (D. C.) 150 Fed. 231.

[2] The question whether Bowring & Co. are personally responsible, because in signing the charter party no principal was disclosed, and whether an action in rem will lie in any event, because the ship had not at time of breach of charter taken aboard any cargo nor gone to a loading berth, need not be considered, because I am of opinion that performance of contract has been prevented, and the charter party relieved, by "restraint of princes."

This Greek steamer cannot fulfill her charter without lawfully clearing from this port; she cannot clear without her papers; the Greek

consul has them, under orders from his government to see to it that the vessel loads for governmental purposes, and he has authority to put on her a captain who will obey these orders, if the present master does not. In the phrase now current, the sovereign of the ship's home and owner has "commandeered" or requisitioned the steamer for government account.

There is certainly no power in any court of the United States to prevent or undo this act of the Greek king and his consul. It is of no moment whether the Greek municipal law is being correctly interpreted by the various Grecian officials concerned—the restraint is actual. and is governmental. Restraint need not be by physical force. Olivera v. Union Ins. Co., 3 Wheat. 183, 4 L. Ed. 365. Many of the cases on restraint are cited in The Styria, 186 U. S. 1, 22 Sup. Ct. 731, 46 L. Ed. 1027, all the British decisions and the American rule as to quarantine, in Carver on Carriage by Sea (5th Ed.) § 82, and Scrutton on Charter Parties (6th Ed.) art. 82.

It is unnecessary to parade the opinions; the essential holding is that restraint which fulfills the exception must be actual, not potential or probable, and must emanate from recognized authority, not, e. g., the brute power of a pirate. I am quite unable to conceive any more actual restraint than is here present. The Athanasios has been in effect seized by the Greek consul, evidently much against the will of her owner and master. For this reason, both libels must be dismissed.

[3] Having reached a decision, going into the merits of the controversy, by interpreting the contract made by the parties thereto, anything further is obiter. Considering, however, the probability of other cases more or less similar arising during the present world war, attention is called to the fact that this libelant is a Canadian corporation asserting a right against a res presently used by the government of Greece. In my opinion there is no compulsion upon a court of admiralty to entertain such a suit, and it is advisable to decline jurisdiction for political reasons.

It may also be noted that, under existing treaties and what has hitherto been considered accepted international usage, it would be the duty certainly of the executive, and probably of the judicial, branch of the United States government to assist the consul general of Greece in carrying out the orders of his king in respect of the Athanasios, inasmuch as such orders in no wise interfere with the peace, order, or dignity, of the United States, however destructive they may be to a private contract between subjects of Greece and Great Britain.

This consideration would (even if the charter party had not contained the usual exemptions) result in denying process, either in rem or by attachment, against the steamship.

Vessel released, and libels dismissed, with one bill of costs.[1]

---

1 NOTE.—Since filing the above Sanday & Co. v. British, etc., Ins., Limited, 113 Law Times Rep. 407, has appeared. "Restraint of princes" is there fully treated in a case not unlike this.