### THE VALMAR.

### CELIO v. JONES.

### No. 13.

District Court, E. D. Pennsylvania.

May 5, 1941.

Freedman & Goldstein, of Philadelphia, Pa., for libelant.

Howard M. Long, of Philadelphia, Pa., for respondent.

KALODNER, District Judge.

General Admiralty Rule 2 provides that: "In suits in personam the mesne process shall be by a simple monition in the nature of a summons to appear and answer to the suit * * * with a clause therein to attach his [respondent's] goods and chattels * * * if said respondent shall not be found within the district. * * *" 28 U.S.C.A. following section 723.

The instant case presents the simple question: What does "found" mean as used in Rule 2?

On February 26, 1941, the libellant Celio, a resident of Brooklyn, N. Y., filed a libel in personam and in rem against the respondent, Walter Jones, and the M/S "Valmar". Jones is and was a resident of New York City. He owned and operated the "Valmar" in foreign commerce under a foreign registry. Following the filing of the libel—and independent of the rem proceeding—the United States Marshal in this District was given a citation with attachment of goods, etc., for service upon Jones. Pursuant to the citation the Marshal attached the "Valmar". The respondent Jones thereupon moved to set aside the citation against the "Valmar" under the writ of foreign attachment on the ground that he was present in Philadelphia at the time the libel was filed and the writ issued, and that he could have been "found" by the Marshal, and that therefore the foreign attachment was invalid.

In support of his contention, the respondent Jones called attention to the following undisputed facts:

That on February 25, 1941—the day before the libel was filed and the writ issued

—that in company with another person the respondent Jones called at the office of the United States Marshal, where he made his identity known and left a letter[1] with a Deputy Marshal, addressed by his proctor to the Marshal, stating, in part: "This is to advise you that the proposed respondent, Walter A. Jones, is now staying in Philadelphia, and if you will advise me when the writ in the aforesaid cause has been handed to you for service, I will produce Mr. Jones so that he may be served, and there will be no foreign attachment of the Valmar or any other of Mr. Jones' property"; that on the following day, February 26, 1941, a short time before the filing of the libel, that Jones again presented himself at the United States Marshal's office, inquired as to whether there had been any suit started or writ issued, and was advised that the Marshal had not as yet received any writ; that subsequently on the same day Howard M. Long, Esquire, proctor for Jones, was advised by the Marshal's office that suit had been started, and that a citation with clause of foreign attachment against Jones had been given to the Marshal's office for service, whereupon Long advised the Marshal that Jones would present himself at the Marshal's office between 9:30 and 10 A.M. the following morning, to wit, February 27, 1941, for service—the return day of the writ being February 28; that nevertheless the Marshal attached the "Valmar" under the clause of foreign attachment on the afternoon of February 26. The Marshal's return[2] shows the service of process on the respondent Jones "personally, at the U. S. Court House" at

---

[1] Following is the complete text of the letter referred to:

"Howard M. Long
"Howard T. Long
"Counsellors at Law
"Proctors in Admiralty
"1911 Packard Building
Philadelphia
"February 25, 1941
"In re: John Celio vs. Walter A. Jones
"Hon. Joseph C. Reing,
"U. S. Marshal, Eastern District of Penna.
"Post Office Building,
"9th & Chestnut Streets,
"Philadelphia, Pa.
"Dear Mr. Reing:
"Mr. Paul Goldstein of the firm of Freedman and Goldstein, Attorneys, advises me this afternoon that they are about to start a suit for breach of charter party on a contract agreement on behalf of one John Celio against Walter A. Jones.
"I represent Mr. Jones and told Mr. Goldstein that I would accept service of the libel, writ and other legal papers in this suit and would enter my appearance as counsel for Mr. Jones in the cause.
"Up to the present writing Mr. Freedman or Mr. Goldstein have not advised me that they desire to follow the proposed procedure and I am of the opinion that they may attempt to have issued and give to you a writ of foreign attachment in said suit directing you to seize the motor vessel Valmar.
"If and when such writ of foreign attachment is presented to you, as you know, it is your duty to make all due effort to serve same upon the respondent before making attachment of his property.
"This is to advise you that the proposed respondent, Walter A. Jones, is now staying in Philadelphia, and if you will advise me when the writ in the aforesaid cause has been handed to you for service, I will produce Mr. Jones so that he may be served, and there will be no foreign attachment of the Valmar or any other of Mr. Jones' property.
"I am sending you this letter by messenger so that you may receive it this afternoon and be advised when the writ, libel or other pleadings in the proposed suit are placed in your hands.
"If you prefer that rather than I bring Mr. Jones to your office for service, I will upon application advise you where you may serve him in Philadelphia.
"Very truly yours,
"(Signed) Howard M. Long."

[2] Marshal's return:

"At Philadelphia, Pa., in my district, on February 27, 1941, served the within citation on Walter Jones, personally, at the U. S. Court House, 9th & Chestnut Sts., Philadelphia, Pa., by handing him a true and attested copy thereof, together with a copy of the libel, and making contents of the same known to him at about 9:27 A. M.; and on February 26, 1941, have attached the within-described M.S. "Valmar" which is already in my custody as of Court Numbers 89 of 1940; 3 of 1941 and 7 of 1941; and made same known to Walter Jones, personally, on Feb. 27, 1941.
"So answers—Joseph C. Reing,
U. S. Marshal,
"per John D. Leahy,
Deputy."

9:27 A.M., February 27, 1941, and the attachment on the "Valmar" the previous day.

It is the respondent's contention that under these facts the foreign attachment was invalid and should be dissolved.

 I am in agreement with that contention.

 It is well settled that the sole requisite for issuance of a foreign attachment lies in the fact that the respondent may not be "found" within the district.

It is also well settled that under a process of foreign attachment, it is the duty of the Marshal to serve the party if he can be "found" in the district, and that the Marshal has no right to attach goods, chattels, etc., before endeavoring to find the party himself. See Benedict on Admiralty, vol. 1, 5th Ed., section 290. Of course, the Marshal is not required to so devote himself to a fruitless search for the respondent as to lose the opportunity of attaching his property.

In this connection, attention may be called to the fact that the "Valmar" was already in the custody of the Marshal as a result of an independent attachment in other litigation.

There are numerous authorities in support of the proposition that a foreign attachment will not lie if the respondent can be "found" in the district. See Atkins v. Fiber Disintegrating Co., 18 Wall. 272, 85 U.S. 272, 21 L.Ed. 841; The Athanasios, D.C., 228 F. 558; Shewan et al. v. Hallenbeck, D.C., 150 F. 231.

The libellant relies on American Potato Corp. v. Boca Grande S. S. Co., D.C., 233 F. 542, 543. In that case the respondent was a Delaware corporation whose main office was in New Orleans. On the day that the vessel (a tramp coaster without a regular run) was attached in Philadelphia, while undergoing repairs and loading a cargo, the president of the respondent corporation was in charge of the vessel as its master. Respondent moved to set aside the attachment on the ground that it was "doing business" in Philadelphia and, further, that the master, as president of the corporation, was a proper official upon whom service of a monition could have been made, and that therefore no foreign attachment could lawfully be levied. Judge McPherson denied the motion to set aside on the ground that "The mere presence of Capt. Lawrence in Philadelphia was not equivalent to the presence of the corporation".

It is clear that Judge McPherson premised his decision on the fact that the presence in this district of an officer of the corporation was not the presence of the corporation itself. In the instant case the respondent Jones is an individual, and thus we have a different fact situation than in American Potato Corp.

Libellant strenuously contends that Judge McPherson's decision requires that the respondent not only be "found" in the district, but that he must be "doing business" in the district, in order to invalidate the foreign attachment.

 I cannot subscribe to that contention. To do so would be to read into General Admiralty Rule 2 an utterly unwarranted meaning. Atkins v. Fiber Disintegrating Co., supra, is clearly dispositive of the libellant's contention that the respondent must not only be "found" in the district, but must also be "doing business" in the district.

For the reasons stated, the petition and motion to vacate and dissolve the foreign attachment is granted, and an appropriate order effecting such vacation and dissolution, and directing the Marshal to amend his return, will be entered upon submission.